IRVING, J., for the court.
¶ 1. Allen Erving was convicted in the Circuit Court of Neshoba County of possession of marijuana and sentenced to a term of three years incarceration in the Mississippi Department of Corrections (MDOC). Aggrieved, Erving comes before this Court asserting three issues which we quote verbatim: (1) the trial court erred in permitting the prosecutor to lead his own witness, (2) the court erred in admitting into evidence the content of the alleged confession, and (3) the court erred in admitting the results of the search warrant because the search warrant was issued without probable cause. We find no merit in these contentions; therefore, we affirm the judgment of the trial court.
FACTS
¶ 2. On February 7, 2000, Officer Patrick Mize of the Philadelphia Police Department answered a call from the manager of the Holiday Inn in Philadelphia regarding a noise disturbance in room 120. When Officer Mize arrived at the Holiday Inn, Cecily Miles, the hotel manager, escorted him to the room. Upon approaching the room, Officer Mize observed that the volume on the television was turned up extremely high. Officer Mize knocked on the door and at some point made a telephone call to the room but received no response. At that point, Officer Mize treated the situation as an emergency. Assuming someone could be in the room injured, Officer Mize and Miles entered the room with a master key. After entering the room, it was apparent to Officer Mize that the occupants were not present. *436 Officer Mize observed in plain view what he thought were several bags of marijuana, two recently burned marijuana cigarettes, and a hand gun. Officer Mize decided to exit the room and discuss with his superior what he had observed in the room.
¶ 3. The matter was discussed with Officer Mike King, the shift commander, and the decision was made to secure a search warrant. While filling out the affidavit for the search warrant, Officer Mize received a tip from a confidential informant who he had used before. The confidential informant stated that there were illegal drugs in room 120 at the Holiday Inn. The informant did not specify how he became aware of this information. Subsequently, the information from the confidential informant was included in an affidavit presented to the justice court judge in support of the search warrant. However, the fact that Officer Mize had already been to the room and discovered the contraband was not included in the affidavit. Officer Mize testified that he provided the justice court judge with additional oral testimony, under oath, to secure the search warrant. This additional testimony included what Officer Mize had observed in the room. On the information provided by Officer Mize, the justice court judge issued a search warrant, and Officer Mize, accompanied by five other officers, left to execute the search warrant.
¶ 4. Using the master key to enter the room, the officers discovered Erving and Dorothy Williams inside the room. All the items that Officer Mize had seen before were still there, in addition to a stack of money that was on the dresser. Shortly after the officers entered the room, according to the State’s witnesses, Erving blurted, “That’s mine, I’m diabetic, I use it for medicinal purposes.” Subsequently, Erv-ing consented to the search of his car where one brick of marijuana and nine individually wrapped bags of marijuana were found. Erving and Williams were arrested at that point.
¶ 5. Erving did not make a motion, until the trial had begun, to suppress either his statement or the evidence found in the room. When he did make the motion, he argued that the evidence should be suppressed because Officer Mize’s first entrance into the room was illegal and everything thereafter was tainted by the initial illegal entry. The trial court overruled the motion. Additional facts, including those in opposition to the suppression motion, will be given during the discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Leading the Witness on Direct Examination

¶ 6. Erving argues that the court erred in overruling his objection that the prosecution was leading the prosecution’s witness, Officer Baysinger, on direct examination. The colloquy was as follows:
Q. Did you observe what y’all believed to be marijuana in the room?
A. Yes, sir.
Q. Did y’all take custody of the evidence?
A. Yes, sir, we did.
Q. During that time that you were in the room, did you hear Mr. Erving say about the marijuana words to the effect, “That’s mine, I’m a diabetic, I use it for medicinal purposes”?
A. Yes, sir.
Q. You heard him say that?
A. Yes, sir.
Q. Do you remember if that was before or after he was read his rights?
*437 A. No, sir.
Q. No, sir, you don’t remember, or—
A. No, sir, I don’t remember.
Q. But you remember him making a statement to that effect?
A. Yes, sir.
Q. Okay. When he said that statement, was it in response to any question that you or any other officer asked him, or is it something he just blurted out voluntarily?
BY MR. BROOKS: Your honor, we object to leading now.
BY THE COURT: Overruled.
A. No, sir, it wasn’t.
Q. (Duncan) It wasn’t what?
A. In reference to any question.
Q. Was it something he just volunteered?
A. Yes, sir.
¶ 7. Erving cites 611(c) of the Mississippi Rules of Evidence as support for this argument. The rule states that “[Heading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony.” The supreme court has defined leading questions as follows:
A leading question is one that suggests to the witness the specific answer desired by the examining attorney. Trial courts are given great discretion in permitting the use of such questions, and unless there has been a manifest abuse of discretion resulting in injury to the complaining party, we will not reverse the decision. This is because the harm caused is usually inconsiderable and speculative, and only the trial court was able to observe the demeanor of the witness to determine the harm.
Tanner v. State, 764 So.2d 385(¶ 58) (Miss.2000) (citing Clemons v. State, 732 So.2d 883 (¶ 25) (Miss.1999)).
¶ 8. We first note that Erving did not make an objection until after the question, encompassing the damaging statement allegedly made by Erving — that’s mine, I’m a diabetic, I use it for medicinal purposes — had been asked and answered. Therefore, Erving’s objection was untimely. This fact notwithstanding, however, in order to justify reversal in this case on the basis of leading questions, Erving would have to show first that the trial court abused its discretion in allowing the questions, that the questions asked influenced Officer Baysinger’s answer and that Erv-ing was prejudiced by those answers. Tanner, 764 So.2d 385(¶ 58).
¶ 9. We cannot say the trial court abused its discretion in allowing the questions. Other than the one question, containing the purported confession by Erving, the colloquy does not reveal any other questions which suggested the desired answer. Moreover, at the time the question was asked, the trial court had already ruled that the statement was admissible as a voluntary statement on Erving’s part. Allowing leading questions regarding the statement at this point was clearly harmless since Erving could not otherwise keep the statement from being admitted. Therefore, Erving’s assertion that he was prejudiced by the prosecution asking leading questions is without merit.

2. Admission of the Confession

¶ 10. Erving makes three arguments in support of his contention that the trial judge erroneously admitted the statement that he used marijuana for medicinal purposes. His first argument is that the prosecution failed to disclose the substance of the statement before offering it into evidence and that the nondisclosure was a violation of Rule 9.04(2) of the Uniform Rules of Circuit and County Court. Secondly, Erving asserts that if the nondisclo *438 sure was not a discovery violation then the statement was an involuntary confession. Thirdly, Erving contends that the statement could have easily been made in response to Officer’s Cook’s inquiry about insulin found in the refrigerator.
¶ 11. Rule 9.04(A)(2) states that “the prosecution must disclose to each defendant or defendant’s attorney ... upon written request ... [c]opy of any written or recorded statement of the defendant and the substance of any oral statement made by the defendant.” URCCC 9.04(A)(2) (emphasis added). Erving submitted no written request for any statements made by him; therefore, he was not automatically entitled to the information for which he now complains.
¶ 12. In his appellate brief, Erv-ing seems to make an oblique argument that the prosecution failed to prove that his confession was voluntary because no testimony was introduced regarding whether he was in a drug-induced state at the time the confession was made. Erving is raising this issue for the first time on appeal. The law is well settled “that the failure to raise an issue in the trial court requires [the appellate court] to impose a procedural bar on appeal.” Evans v. State, 725 So.2d 613(¶48) (Miss.1997). The record reflects that when Erving initially objected to the statement’s admissibility, he provided no basis to the trial court for his objection, nor did the court ask him for one. Erring on the side of caution, the court, sua sponte, held an Agee hearing[1] to establish admissibility of the statement. The record is void of any evidence that Erving ever submitted a written or verbal motion to suppress the statement on the basis of lack of voluntariness, or for that matter, on any other basis. We find that Erving has already benefitted from a hearing on admissibility which he never requested nor was necessarily entitled to. Therefore, we find that this argument lacks merit.
¶ 13. We find Erving’s argument — that the statement could have been in response to Cook’s question about insulin — to be a bit curious because of its equivocal nature. It is enigmatic that Erving refuses to take an emphatic position as to when the statement was made while at the same time arguing that the trial court erroneously admitted the statement. The timing of its utterance is crucial to the exploration of the appropriateness of the trial judge’s ruling. If the statement was voluntarily made, without custodial interrogation, either before or after Erving was given the Miranda warnings, there would be no impediment to its admissibility. On the other hand, if it was made pursuant to custodial interrogation prior to the warnings being given, a different result would be warranted. Notwithstanding Erving’s refusal to be definitive in his position, five officers testified that Erving essentially said that the marijuana was his, that he was a diabetic, and that he used the marijuana for medicinal purposes. Further, they all testified that the statement was voluntarily made and that it was not made in response to interrogation by any officer. This testimony was uncontra-dicted. The trial court ruled that the statement was not made pursuant to custodial interrogation and that whether it was made in reference to the marijuana or the insulin was a matter for the jury to decide. *439 We cannot find any fault with this ruling, and Erving’s assertion to the contrary is wholly without merit.

3. Validity of the Search Warrant

¶ 14. In his appellate brief, Erving argues that the affidavit used to secure the search warrant was insufficient to provide probable cause for the search for two reasons: the informant did not reveal how he knew the drugs were in the room, and Officer Mize only orally supplemented the fact that he had been to the hotel room and saw the contraband in plain view rather than committing those facts to the written affidavit along with the information that he received from the confidential informant.
¶ 15. We find that Erving is procedurally barred from questioning in this appeal, on the above stated grounds, the adequacy of the affidavit in support of the search warrant and the warrant itself because he made it clear in the trial court that he was not raising any issues regarding the affidavit and search warrant. The record reveals the following:
BY THE COURT: All right. You want to be heard on this, Mr. Brooks [counsel for Erving]?
BY MR. BROOKS: Yes, Your Honor. Your Honor, we are not questioning the affidavit for the search warrant or the search warrant itself, but the initial search which led to both the search by the search warrant of the room and the search of the automobile. We say both are tainted by the initial entry, trespass, and search of the motel room.
While Erving argued in the court below that the search pursuant to the search warrant was illegal because of Officer Mize’s prior entry into the room, he makes no such argument in this appeal. Therefore, we find it unnecessary to address the legality of Officer Mize’s initial entrance into the motel room where the contraband was found.
¶ 16. THE JUDGMENT OP THE CIRCUIT COURT OF NESHOBA COUNTY OF CONVICTION OF POSSESSION OF MORE THAN ONE OUNCE OF MARIJUANA AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $3,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NESHOBA COUNTY.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ„ CONCUR. SOUTHWICK, P.J., CONCURS IN RESULT ONLY.

. An Agee hearing derives from Agee v. State, 185 So.2d 671 (Miss.1966). This is a suppression hearing where the State, on a defendant’s motion to suppress a confession or statement for lack of voluntariness, is required, prior to the admission of the statement, to produce the testimony of all law enforcement officers present when the defendant’s statement was given.